## BRANTLEY v. BRANTLEY.

(Court of Civil Appeals of Texas. Texarkana. March 7, 1912.)

**1. EVIDENCE (§ 434*) — PAROL EVIDENCE — VARYING TERMS OF DEED.**

Where a husband claimed a community interest in land conveyed by him to his wife, evidence that the deed was executed with the intent to avoid the collection of any judgment which might be rendered against him in a pending action was admissible to show that the deed was a sham, executed with no intention on the part of either of the parties of passing any title, as against the objection that it varied the terms of a written instrument.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2005–2020; Dec. Dig. § 434.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

**2. FRAUDULENT CONVEYANCES (§ 172*) — COMMUNITY PROPERTY — CONVEYANCES BY HUSBAND TO WIFE.**

A husband who, in a suit for divorce and division of community real estate, sought to impeach the validity of a deed by him to his wife, must show that he had no intent of passing title to the wife and that she accepted the deed with the same understanding, and mere proof that he executed the deed with intent to avoid the collection of any judgment which might be rendered against him in a pending action did not show the invalidity of the deed.

[Ed. Note.—For other cases, see Fraudulent Conveyances, Cent. Dig. §§ 523–529; Dec. Dig. § 172.*]

Appeal from District Court, Tarrant County; Jas. W. Swayne, Judge.

Action by J. W. Brantley against Tillie Brantley, who filed a cross-bill for divorce. From a judgment granting a divorce on the cross-bill and partitioning the property of the parties, defendant appeals. Affirmed in part, and reversed and rendered in part.

Baskin, Dodge & Baskin and W. J. Wasson, all of Ft. Worth, for appellant. McLean & Scott, of Ft. Worth, for appellee.

HODGES, J. The following agreed statement sufficiently discloses the nature and material facts involved in this suit:

"First. This suit was filed November 12, 1909, by the plaintiff, J. W. Brantley, against his wife, Tillie Brantley, the defendant, alleging marriage in May, 1906, and separation in October, 1909, praying for divorce and division and partition of alleged community real estate described as lots 2 and 4, in block 1, Moody & Evans subdivision of block 20, Fields-Welch addition to the city of Ft. Worth, Tarrant county, Tex. On December 31, 1909, the defendant filed her answer and cross-bill for divorce, alleging marriage and separation as in plaintiff's petition and cruel treatment by the plaintiff toward her rendering their living together insupportable, also alleging said real estate to be her separate property, and praying for divorce, and that said property be set apart to her in her separate right and estate.

"Second. The court tried the case without a jury, and found against the plaintiff on his action for divorce, and granted the defendant a divorce from the plaintiff on her cross-bill, also found the said property to be community and not the separate estate of defendant and ordered partition thereof by judgment dated September 30, 1910. No complaint is made of that part of the judgment granting the divorce. The issue relates solely to the property rights; that is, whether under the law and the facts the said real estate is community and subject to partition as claimed by plaintiff, or the separate estate of defendant as claimed by her. Motion for a new trial was filed by defendant September 30, 1910, praying that said judgment as relates to property rights be set aside, etc., which motion was thereafter on said day overruled by the court, to which judgment and order the defendant excepted and in open court gave notice of appeal to the Court of Civil Appeals for the Second Supreme Judicial District of Texas, at Ft. Worth, and 30 days after the adjournment of the term was granted by the court in which to file statement of facts and bills of exceptions.

"Third. The following facts were proved regarding the property rights: (a) That on the —— day of ——, 1907, during the marriage relation, the plaintiff and defendant acquired the fee-simple title to the above-described real estate, and that thereafter, on the 19th day of February, 1909, the plaintiff by his general warranty deed, in usual form duly acknowledged, executed, and delivered to her, conveyed to the defendant, Tillie Brantley, the said property, reciting a consideration of '$10.00 and natural love and affection,' and the granting clause reciting it was sold and conveyed to her 'for her own use and behoof and as her own separate property and estate.' That the said deed was filed for record in the Deed Records of Tarrant county on the date of its execution, and after being recorded has since been in the possession of the defendant. (b) That a few days prior to the execution and delivery of the said last mentioned deed the plaintiff, who was a retail liquor dealer and under bond as by law provided, was sued on said bond by parties claiming a breach thereof for alleged sale to a minor, and that in truth and in fact the said deed was made and executed for the purpose and with the intent to avoid the collection of any judgment which might be rendered against the said J. W. Brantley in said suit. That said liquor bond suit was thereafter and before the separation of the parties to this suit compromised and settled out of court. (c) That the community estate of the plaintiff and defendant owes the Detroit United Bank about the sum of $1,000 secured by lien on a portion of the said property, which indebtedness was incurred and lien created prior to February 19, 1909, the date of plaintiff's said deed to defendant; also, that said community owes the sum of $—— to the National Liquor Company, $—— to the Casey-Swasey Company, and $—— to Horace Brantley.

"Fourth. That the facts set out in subdivision 'b' of the third paragraph of this agreement were proven by the parol testimony of the plaintiff, J. W. Brantley, over the objection of the defendant timely interposed (and overruled by the court) that said evidence was not admissible because showing an intention by the grantor in the deed different from the clearly expressed intention shown by the deed, there being no claim of fraud or mistake that would defeat said deed as a conveyance, to which evidence and the action of the court in admitting and considering the same the defendant duly reserved

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r indexes

145 S.W.—65

and was granted her bill of exceptions, and this paragraph is intended to present the question of the admissibility of said evidence for the consideration of the court as fully in all respects as might be done by formal bill of exceptions duly proved and filed.

"Fifth. That the title to said property is in the defendant in her separate right under said deed of February 19, 1909, unless said deed is subject to attack by the parol evidence of the plaintiff establishing the facts set out in subdivision 'b' of said third paragraph, and that, if the deed is subject to such attack (in the absence of fraud or mistake), the title is in the community."

Only two of the assigned errors will be noticed. One of these complains of the admission of the testimony of Brantley, the appellee, which is referred to in the above statement. The other assails the correctness of the court's legal conclusions upon which he based the judgment rendered disposing of the property.

[1] The specific objection urged to the admission of the testimony set out in what is termed "paragraph 'b' " in the agreed statement is that it showed an intention on the part of the grantor different from that expressed in the deed. The pleadings show that Brantley was claiming a community interest in the lots described in the deed to his wife. It is clear that he had no such interest, if the deed is to be given the meaning which its terms import and is valid. The testimony was admissible for the purpose of showing that this deed was entitled to no legal recognition; that it was executed as a sham, and with no intention on the part of either the grantor or the grantee of passing any title. Davis v. Davis, 44 Tex. Civ. App. 238, 98 S. W. 198. If offered for that purpose, it was not subject to the objection that it tended to vary the terms of a written instrument. Burke v. Dulaney, 153 U. S. 228, 14 Sup. Ct. 816, 38 L. Ed. 698; So. Street Ry. Co. v. Metropolitan Shoe Mfg. Co., 91 Md. 68, 46 Atl. 513; 1 Greenleaf on Evidence, § 284, p. 439; Bradner on Evidence, § 296. In the Maryland decision above referred to the following extract from the first case cited is quoted approvingly: "The rule that excludes parol evidence in contradiction of a written agreement presupposes the existence in fact of such agreement at the time the suit is brought, but the rule has no application if the writing was not delivered as a present contract; and parol evidence was admissible to show that there never was any concluded binding contract entitling the party who claimed the benefit of it to enforce its stipulations." The deed itself was not per se the contract. If anything, it is the memorial of a prior legal transaction which constituted the real undertaking. If there was no such prior legal transaction which attained the dignity of a contract, and the deed was executed and exhibited by the parties without any intention of passing title, but as a sham

for the purpose of perpetrating a deception to serve some ulterior purpose, those facts may be shown in a controversy like the present when no rights of third parties would be affected. In such an instance there would be no occasion to set up fraud, accident, or mistake as the basis for the introduction of such evidence, for the reason that none existed. The execution and recording of the deed might have been the deliberate acts of both parties, and yet pass no title. The case of Davis v. Davis, supra, is one in which the facts are in some respects similar to those here involved. One of the issues was as to whether or not the deed relied upon by some of the parties was ever delivered in pursuance of a pre-existing contract. In disposing of a charge upon that issue, Justice Talbot said: "The charge admits of the construction, and is, in fact, we think, to the effect, that although R. C. Davis did not himself intend to convey the title to the land described in the deed to his wife, Mrs. E. D. Davis, and the same was without consideration, yet if he made said deed and placed it upon record for the purpose of defrauding his creditors, and informed Mrs. Davis that he had conveyed to her said land for such purpose, and thereafter retained control of said deed, until his death, as her property, intending that the title should remain in her, then, notwithstanding the original undisclosed intent of R. C. Davis not to convey the title to said land, plaintiffs could not recover. It evidently was not so intended, nor was the jury authorized by the charge to find for the defendants, notwithstanding they should believe the deed under which defendants claim was a mere sham and pretense by which neither party thereto intended the title to the land therein described should pass. Such a charge, as has already been said, would not have been warranted by the evidence, and that the learned trial judge so believed is evidenced by the rejection of the plaintiffs' special charge, tendering the submission of such an issue, mentioned in a former part of this opinion. So far as the transfer of the title to property is concerned, there is quite a difference in a conveyance made with the intent of the grantor to defraud his creditors, and an instrument in the form of a deed by which neither the grantor nor grantee intends the title to be divested. In the one case the title passes to and vests in the grantee, and the contract is binding as between the parties thereto, but void as to creditors. In the other, the title does not pass, but remains in the grantor. The object and effect of the charge under consideration was to inform the jury that, if the transaction between R. C. Davis and his wife was of the character first mentioned, then the deed to Mrs. Davis could not be impeached by plaintiffs on the ground that her husband did not intend to convey the title to the land to her."

[2] But, while the evidence objected to by appellant may have been admissible as against the particular objection urged, it does not follow that it was sufficient to support the legal conclusion that the lots were the community property of Brantley and his wife. We gather from the agreed statement that this testimony was all that was introduced bearing directly upon that issue, and that, unless it is sufficient to impeach the validity of the deed, that instrument should be given the legal effect of the language used. This, of course, would be to invest Mrs. Brantley with the right to hold the lots in controversy as her separate property. Parks v. Worthington, 101 Tex. 505, 104 S. W. 909; Kahn v. Kahn, 94 Tex. 114, 58 S. W. 825. In order to impeach the validity of the deed and have it disregarded in this suit, it devolved upon the appellee, not only to show that he had no intent of passing the title, but that his grantee accepted the deed with the same understanding. See Davis v. Davis, supra. We think the court erred in his conclusions of law in rendering a judgment awarding to the appellee a community interest in the lots.

We gather from the findings of fact filed in this case that all the remaining property rights were settled out of court, and that the question here discussed is the only issue left in dispute.

The judgment of the trial court in granting the divorce will be affirmed, but that portion in which the property is disposed of will be reversed, and judgment here rendered in favor of the appellant for the two lots in controversy.